IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-725-05






NICHOLAS DURAN BALLARD, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SIXTH COURT OF APPEALS


GREGG COUNTY





 Keller, P.J., filed a dissenting opinion in which MEYERS, and
HOLCOMB, JJ., joined. 





 Appellant kidnapped his ex-girlfriend at gunpoint and took her to his home. Once there, he
showed her that the gun was not loaded, and they had consensual sex. A few hours later she and
appellant drove together in her car to the bank and to the grocery store, where he left her alone in the
parking lot while he went inside. The basic question in this case is whether this constituted a
voluntary release in a safe place. Our past attempts to explain the meaning of that phrase have
worked fairly well for the particular facts presented to us in particular cases, but we do not seem to
have been very successful at articulating a universal rule to guide litigants and judges. The Court
of Appeals carefully analyzed the issue here with reference to our prior holdings, but I do not believe
that our prior holdings are adequate to deal with the facts in this case.

 The Court of Appeals related the following regarding the victim Lambeth's testimony about
the situation at the bank:

 At the bank, she thought Ballard was no longer a threat and that she could have
escaped. Rather than being afraid of Ballard, she felt depressed and upset....She no
longer feared that Ballard would catch her if she left and explained it was her
decision to stay: "I could leave if I wanted to, but I didn't want to leave him there." 
She attributes her remaining in the truck to her own feelings. She did not leave at that
point, she said, "[b]ecause [she] wouldn't do that to him, [she] wouldn't leave him
stranded." At that point, "everything was back to normal." To demonstrate when
Lambeth felt she was out of danger and free to go, she testified to the following: I
could have left him, you know. I didn't have to take him to town, I could have left
in the car then, I just didn't. I just felt - I didn't feel he was a threat to me at that
point and I knew he wouldn't harm me after that. I pretty much knew he wasn't going
to harm me after we talked a little while in the car on the way to his house. (1)


 Lambeth also said, however, "I didn't leave because I just got back in the groove that I was
used to." The Court of Appeals found this statement to be ambiguous, meaning either that Lambeth
remained with appellant willingly or that she had acquiesced to his control and the unhealthy
dynamics of their prior relationship. The court considered this to be evidence that, even though
appellant no longer had a gun with him, the elements of fear and control played a part in Lambeth's
decision to remain in the car while appellant went into the store and the bank.

 The State argues that appellant failed in his burden because there is no evidence that he
overtly communicated to Lambeth that she was free to leave. While some courts of appeals have
articulated this "overt communication" requirement, we have not. I do not think that overt
communication of intent to release is necessarily required in every case. Here, Lambeth said that she
no longer feared that he would catch her if she left and she thought she was free to leave, and in fact
there is no evidence to the contrary regarding the time during which she was left alone in her car. 
She could have just driven away. 

 The State also argues that, given the emotional, psychological and violent history of appellant
and his victim, Lambeth was not fully released from captivity. It is true that Lambeth had every
reason to fear appellant and to believe that if she left, he would find her. He had beaten her before,
and he had threatened to kill her. But if a psychological hold on a person is considered to be
pertinent to the question of release, I have to wonder how a kidnapper who knows his victim and
knows where she lives can ever release her in a safe place. Even if we assume that the "groove" the
victim returned to was an attitude of fear rather than an emotional attachment, I do not believe that,
for purposes of the kidnapping statute, a release that would otherwise be considered "release in a safe
place" is negated by that kind of hold. And in this case, of course, the evidence of a psychological
hold was, at the very best, ambiguous.

 The Court's opinion says that, even if the victim had chosen to drive away from the bank or
grocery store without appellant, her actions would have constituted an escape. I disagree. At that
point, by her own testimony, she was in her own car and "free to go." The only thing conceivably
left to keep her there was the "psychological hold," which she couldn't have escaped from by driving
off anyway.

 I respectfully dissent. 

 Keller, P.J.

Date filed: June 7, 2006

Publish
1. Ballard v. State, 161 S.W.3d 269, 275 (Tex. App.-Texarkana 2005).